**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,

                         Plaintiff,

v.

PAUL A. PEREIRA,

                         Defendant.

_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

### I.  INTRODUCTION

1.      This case concerns a fraudulent scheme by Defendant Paul A. Pereira ("Defendant or "Pereira"), the former Chief Executive Officer ("CEO") and co-founder of Alfi, Inc. ("Alfi"), an advertising technology company, to deceive investors about Alfi's success and financial performance in order to generate interest in the company and boost Alfi's stock price.

2.      From at least June 2021 to August 2021, Pereira made materially false and misleading statements regarding the company's revenues, an alleged agreement with a third party to place Alfi technology in retail locations, and the company's current and projected advertising inventory. The term "advertising inventory," a key performance metric for Alfi, refers to the amount of advertising revenue that a company can generate from its media assets, such as billboards, devices, or other displays.

3.      Pereira made these false and misleading statements in pseudonymous social media posts, a YouTube interview, and in a company-issued press release.

4.    By engaging in the conduct set forth in this Complaint, Pereira violated Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1) and 77q(a)(3)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5]. Unless enjoined, Pereira is reasonably likely to continue to violate the federal securities laws. In addition to permanent injunctive relief, the Commission also seeks an order requiring Pereira to pay a civil penalty and an officer and director bar.

## II.  DEFENDANT AND RELEVANT ENTITY

### A.  Defendant

5.    Pereira, age 62, resides in Miami Beach, Florida. In April 2018, Pereira co-founded Lectrefy, a company later renamed Alfi, and served as its CEO and on its Board of Directors from April 4, 2018, until he resigned on February 2, 2022.

### B.  Relevant Entity

6.    Alfi, a Delaware corporation formed in 2018 and headquartered in Miami Beach, Florida, was an advertising technology company that purportedly developed technology to measure and generate reporting on audience presence, demographics, and responses to digital advertisements. Alfi's common stock and warrants were registered with the Commission under Section 12(b) of the Exchange Act and traded on the NASDAQ Stock Market from May 3, 2021 until October 27, 2022, when they were delisted. On October 14, 2022, Alfi filed a petition for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. *In re Alfi, Inc.*, Case No. 22-bk-10979 (Del. Bankr. Oct. 14, 2022).

### III.   JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(c)], and Sections 21(d) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa(a)].

8.      This Court has personal jurisdiction over the Defendant and venue is proper in the Southern District of Florida because: (a) Pereira resides in the District; and (b) a substantial part of the events or omissions giving rise to the violations of the Securities Act and the Exchange Act occurred in the District.

9.      In connection with the conduct alleged in this Complaint, Pereira, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

### IV.   FACTUAL ALLEGATIONS

#### A.   Alfi's Business and Initial Public Offering

10.      In April 2018, Pereira cofounded Lectrefy, a company which was later renamed Alfi, along with his son and a business associate. Alfi was in the business of creating technology that purportedly used artificial intelligence and big data analytics to measure and predict human responses to advertisements.

11.      As part of its business strategy, Alfi developed advertising technology for tablets and kiosks, and attempted to contract with brands and advertising firms to display advertisements on the devices.

12.      According to the company's amended Form S-1 filed with the Commission on April 26, 2021, the technology was able to "determine the age, gender, ethnicity, geolocation and

emotion" of someone in front of an Alfi-enabled tablet or kiosk, and then deliver, in real time, advertisements suited to that viewer based on the viewer's profile. In media interviews, Pereira explained that Alfi-enabled devices were able to detect, for example, a 25-year-old female wearing a pair of yellow sunglasses in front of the device, and then show Louis Vuitton products or Gucci sunglasses to her instead of ads on retirement homes.

13.     Alfi's success depended, in significant part, on the size of its advertising inventory, also known as revenue inventory, which means the amount of advertising revenue that a company is able to generate from its media assets, such as screens, devices, or other displays.

14.     One key element of Alfi's business strategy was contracting with Uber, Lyft, and taxi drivers and distributing Alfi-enabled devices to their vehicles to play advertisements and generate revenue.

15.     By November 2020, however, the company had generated no revenue and was running out of funds to operate the business. To raise money, Pereira, other members of Alfi management, and the Board of Directors decided to conduct an initial public offering ("IPO") of Alfi stock.

16.     Alfi filed a draft Form S-1 registration statement with the Commission on November 30, 2020. The registration statement became effective on May 3, 2021, and trading in Alfi common stock and warrants on the NASDAQ Stock Market began the following day. The company reportedly raised around $17.8 million in the initial public offering. Investors exercised Alfi warrants throughout the period from approximately June 18, 2021 through approximately September 20, 2021. During this period, the company received approximately $16 million from the sale of warrants.

**B. Pereira Created a Pseudonymous Account on Stocktwits and Posted Material Misrepresentations Concerning Alfi's Revenues**

17.     In the months following Alfi's May 4, 2021 IPO, the company received attention from members of the press and retail investors on social media, who began to describe Alfi as a so-called "meme stock." The term "meme stock" generally refers to equity securities that experienced extreme price volatility during the periods of 2020 and 2021 due, at least in part, to abnormally high volumes of buying and selling in the stock by retail investors.

18.     Alfi's stock price experienced significant price and volume volatility. On the day of its IPO, Alfi's common stock opened at a price of $3.60 per share. By June 16, 2021, the stock price had increased to $9.22 per share and, on June 28, 2021, the stock was trading at more than $22 per share before declining steadily through July 2021.

19.     Increasing Alfi's visibility on social media platforms with a large retail investor audience was a priority for Pereira. Pereira expressed concern to Alfi employees about the lack of attention being paid to Alfi on social media. He directed employees to post favorable information about Alfi to social media platforms, such as Stocktwits, a finance-focused social media platform popular among retail investors.

20.     On or around May 18, 2021, Pereira created an account on Stocktwits under the moniker "Uptix12." Over the next five months, in violation of Alfi's social media policy, Pereira posted information on Stocktwits about Alfi multiple times per week and, often, multiple times per day.

21.     Due to the pseudonymous nature of the "Uptix12" moniker, which did not identify Pereira, there was no way for Stocktwits users to determine that Pereira, the CEO of Alfi at the time, controlled the Uptix12 account. Through the account, Pereira often made posts praising

Alfi's technology and strategy and, at times, he disparaged other Stocktwits users who criticized Alfi.

22.     On June 3, 2021, Pereira posted the following materially false and misleading statement on Stocktwits about Alfi's reported revenues: "$ALF Read between the CEO lines. Focused execution. They know exactly what they are doing. I wouldn't doubt that ALFI have [sic] $10 mm to $20 mm in revenues already in their back pocket!"



23.     When he posted this statement on Stocktwits, Pereira knew, or was reckless in not knowing, that Alfi did not have anywhere close to $10 million to $20 million in revenues.

24.     The day before his post, on June 2, 2021, Pereira received a near final draft of Alfi's first Form 10-Q, reporting revenues of only $17,450 for the three-month period ending March 31, 2021. The final version of the Form 10-Q, filed with the Commission on June 10, 2021, also reported $17,450.

25.     In its filings with the Commission, Alfi reported only $26,465 in revenues for the fiscal year ending December 31, 2021, and $63,303 and $129,302 for the quarters ending March 31, 2022, and June 30, 2022, respectively.

### C.  Pereira Falsely Claimed that Alfi Entered into an Agreement with a Third Party for the Deployment of Alfi Technology

26.      On June 16, 2021, six days after Alfi reported revenues of only $17,450 for the period ending March 30, 2021, Pereira gave an interview on the YouTube channel of a financial media company.

27.      During the interview, Pereira told the host of the program that: "[T]he founder of [a large restaurant chain] . . . is an investor in Alfi. He was so intrigued by the technology that we're going into contract with his chain and his restaurants to deploy Alfi in those restaurants."

28.       At the time he made this statement, Pereira knew, or was reckless in not knowing, that no such contract had been contemplated by the parties. The founder never discussed a contract to deploy Alfi technology in his restaurant chain with Pereira or any other Alfi personnel. In fact, by the time he met Pereira, the founder had retired from the restaurant business and was not authorized to bind any restaurant chain to a contract.

### D.  Pereira Made Material Misstatements and Omissions Concerning Alfi's Current and Projected Advertising Inventory

29.      By July 2021, Alfi had engaged an advisor to identify companies as potential acquisition targets. Pereira hoped to increase the price and daily trading volume of Alfi stock to improve the company's negotiating position in a potential acquisition.

30.      On July 15, 2021, Pereira emailed Alfi's external investor relations consultant that the company "need[s]" daily trading volumes of 10 million shares and a stock price between $18 and $20 to close an acquisition. Alfi common stock's opening price that day was $10.64 per share, which was down from its high of $22.50 per share on June 28, 2021.

31.      By early August 2021, Alfi common stock was trading predominately in the $7 to $9 per share range.

32.     Pereira was concerned about the continuing decline in Alfi's stock price. On August 12, 2021, Pereira emailed Alfi's investor relations consultant, copying other Alfi senior executives, and explained that the company needed to regain some of its lost market capitalization.

33.     On August 16, 2021, Alfi's in-house social media manager emailed Pereira that "the news among the retail community is not what we expect. The investors want to know about the earnings, and they don't necessarily want to see study data…." He added that the company's external investor relations consultant "is hopeful that the sentiment will change when the quarterly earnings comes [sic] out today."

34.     However, later that day, Alfi reported revenue of only $936 for the quarter ending June 30, 2021, and on the following day, August 17, 2021, the company's stock price opened at $6.90 per share, its lowest price in nearly two months. That very day, Pereira took action, issuing multiple materially false and misleading statements and omissions in a company press release and several Stocktwits posts concerning Alfi's annual revenue inventory.

35.     On August 17, 2021, at 11:36 a.m. EST, Pereira, as CEO, approved the issuance of a press release announcing that the company planned to distribute Alfi-enabled devices to rideshare vehicles in 14 U.S. cities. The press release stated prominently that Alfi would have in "Excess of $100 million in advertising inventory available before end of 2021."

36.     The press release also included the following quote inserted by, and attributed to, Pereira: "Launching our rideshare partner program nationally is a significant milestone for Alfi. Our available advertising inventory by the end of 2021 is expected to be in excess of $100 million and by the end of 2022 in excess of $500 million."

37.     Shortly after approving the press release, between 12:10 p.m. and 1:26 p.m. EST, Pereira made three separate posts on Stocktwits through his Uptix12 account, further representing that Alfi has $100 million in revenue inventory:



38.     Pereira's statement that "Alfi has $100 million of revenue inventory" was false. At the time, Alfi had distributed, at most, 1,500 Alfi-enabled devices, and internal company estimates provided to Pereira showed that the company expected to generate approximately $238.63 per month from each device. Far short of $100 million, as of August 17, 2021, the company only had, at most, $4.3 million of revenue inventory.

39.     In addition, Pereira's statements projecting that Alfi would have $100 million of revenue inventory by the end of 2021 lacked a reasonable basis. Pereira knew, or was reckless in

not knowing, that to achieve $100 million in annual advertising inventory by the end of 2021, Alfi would have had to distribute approximately 35,000 Alfi-enabled devices in rideshares by the end of 2021, with each device projected to generate approximately $238.63 per month.

40.     But, on July 30, 2021, just a few weeks before releasing his projections, Pereira received an email from Alfi staff, showing an internal target of 8,600 device distributions by the end of 2021. Pereira called the number of signed agreements with rideshare drivers "very concerning."

41.     Pereira had reason to be concerned. Even the target of 8,600 device distributions by end of 2021 was optimistic. The July 30, 2021 email showed, at most, 1,323 devices had been distributed as of that date. In addition, the company experienced significant difficulties contacting drivers and procuring from them the documentation required to obtain a device, such as proof of insurance and drivers' licenses. Alfi engineers also were still in the process of resolving technical issues that affected the ability of the devices to play advertisements reliably.

42.     By August 2021, Alfi only had around 20,000 tablets in physical inventory and had distributed no more than 1,500 devices.

43.      Not surprisingly, by the end of 2021, Alfi had no more than $5.4 million in advertising inventory and not the $100 million that Pereira had projected.

### E.  Pereira's Resignation and Alfi's Bankruptcy

44.     On October 22, 2021, the Board of Directors placed Pereira on administrative leave and authorized an independent internal investigation conducted by a special committee of the Board regarding certain corporate transactions unrelated to the allegations in this Complaint.

45.     The Board's special committee found that, in addition to corporate governance abuses and related misconduct by Pereira, inaccurate social media posts were made from a

pseudonymous account using Pereira's computer. On February 2, 2022, Pereira resigned his position as a director and as CEO.

46.     On October 14, 2022, Alfi filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware.

## V.  CLAIMS FOR RELIEF

### COUNT I

**Violations of Section 17(a)(1) of the Securities Act**

47.     The Commission repeats and realleges paragraphs 1 through 46 of this Complaint as if fully incorporated herein

48.     From at least May 2021 to September 2021, Defendant, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, directly or indirectly, employed devices, schemes, or artifices to defraud. By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### COUNT II

**Violations of Section 17(a)(3) of the Securities Act**

49.     The Commission repeats and realleges paragraphs 1 through 46 of this Complaint as if fully incorporated herein.

50.     From at least May 2021 to September 2021, Defendant, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions,

practices, or courses of business which have operated, are now operating, or will operate as a fraud or deceit upon the purchasers.

51.     By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT III

### Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act

52.     The Commission repeats and realleges paragraphs 1 through 46 of this Complaint as if fully incorporated herein.

53.     From at least May 2021 to September 2021, Defendant, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes, or artifices to defraud in connection with the purchase or sale of any security.

54.     By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT IV

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act

55.     The Commission repeats and realleges paragraphs 1 through 46 of this Complaint as if fully incorporated herein.

56.     From at least May 2021 to September 2021, Defendant, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in

order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

57.     By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## COUNT V

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act

58.     The Commission repeats and realleges paragraphs 1 through 46 of this Complaint as if fully incorporated herein.

59.     From at least May 2021 to September 2021, Defendant, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating, or will operate as a fraud upon any person in connection with the purchase or sale of any security.

60.     By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

## VI.   RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendant committed the violations alleged, and:

**A.**
**Permanent Injunction Against Defendant**

Issue a Permanent Injunction enjoining Pereira from violating Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(1) and 77q(a)(3)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**B.**
**Civil Penalty**

Issue an Order directing Pereira to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78(d)(3)].

**C.**
**Officer and Director Bar**

Issue an Order barring Pereira, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any company that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

**D.**
**Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**E.**
**Retention of Jurisdiction**

Further, the Commission respectfully requests the Court retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## VII.  JURY TRIAL DEMAND

The Commission demands a trial by jury on all issues so triable.


Dated: February 27, 2024                    Respectfully submitted,


                                            *s/Russell R. O'Brien*
                                            Russell R. O'Brien
                                            Trial Counsel
                                            Fla. Bar No. 084542
                                            Direct Dial: (305) 982-6341
                                            Email: obrienru@sec.gov

                                            Alexander H. Charap
                                            Senior Counsel
                                            Fla. Bar No. 1035908
                                            Direct Dial: (305) 416-6228
                                            Email:  charapal@sec.gov


                                            Attorneys for Plaintiff
                                            **SECURITIES AND EXCHANGE**
                                            **COMMISSION**
                                            801 Brickell Avenue, Suite 1950
                                            Miami, Florida 33131
                                            Telephone: (305) 982-6300
                                            Facsimile: (305) 536-4146